FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 15, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIO C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | No.   4:25-cv-5057-EFS <br><br> **ORDER RULING ON CROSS MOTIONS FOR REMAND AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Julio C. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred in her evaluation of the medical opinion evidence, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court remands the case for further proceedings.

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS MOTIONS TO REMAND - 1

# I.    Background

Plaintiff alleges disability due to human immunodeficiency virus (HIV), degenerative disc disease of the cervical spine, major depressive disorder, and generalized anxiety disorder.  Due to his physical and mental impairments, Plaintiff protectively filed for disability insurance benefits and supplemental security income benefits in May 2019, alleging an amended onset date of April 10, 2019.[2] Plaintiff's claims were denied at the initial and reconsideration levels.[3] Plaintiff requested an ALJ hearing.[4] On April 8, 2021, Plaintiff appeared for a hearing before ALJ Lori Freund.[5] On September 15, 2021, the ALJ

---

[2] AR 445-446, 447-456, 242.

[3] AR 299-304, 321, 332.

[4] AR 343.

[5] AR 174-205.

issued a decision denying Plaintiff's claim.[6] After the Appeals Council denied review on June 21, 2022,[7] Plaintiff filed suit in this Court.[8]

On June 13, 2023, this Court remanded the case for further proceedings.[9] Consistent with this Court's order, the Appeals Council remanded the case on December 11, 2023.[10]

On June 17, 2024, Plaintiff attended a hearing with her attorney before ALJ Freund.[11] Plaintiff testified and two medical experts testified regarding Plaintiff's physical and mental impairments.[12] On January 8, 2025, the ALJ held a supplemental hearing at which

---

[6] AR 21-47.

[7] AR 1-9.

[8] AR 1857-1862.

[9] AR 1873-1884, 1885.

[10] AR 1891-1897.

[11] AR 1742-1783.

[12] *Id.*

Plaintiff and a vocational expert testified.[13] On March 4, 2025, the ALJ issued a decision again denying Plaintiff's claims.[14]

ALJ Freund evaluated a number of medical opinions and the record and found:

- The hearing testimony and opinion of reviewing medical expert Ken Berger, MD, to be generally persuasive.

- The hearing testimony and opinion of reviewing medical expert James Brooks, PhD, to be persuasive.

- The opinions of state agency consultant Patricia Kraft, PhD, to be partially persuasive.

- The opinions of non-medical source disability examiner Shana B. (incorrectly attributed to an unsigned medical source) to be supported by statements and consistent with evidence.

- The opinions of state agency medical consultant Lewis Cylus, MD, to be less persuasive.

---

[13] AR 1784-1820.

[14] AR 1702-1740.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

- The opinions of state agency medical consultants Alnoor Virji, MD; Norman Staley, MD; Renee Eisenhauer, PhD; and Michael Regets, PhD, to be persuasive.

- The opinions of treating source Neil Barg, MD, to be persuasive.

- The hearing testimony and opinion of reviewing medical expert Stephen Anderson, MD, to be very persuasive.

- The May 2019 opinions of examining source David Morgan, PhD, to be not persuasive. The December 2022 examining opinions of Dr. Morgan to be inconsistent with the evidence. The April 2023 examining opinions of Dr. Morgan to be not supported by the evidence. The November 2023 examining opinions of Dr. Morgan to be not supported by the evidence.

- The December 2022 and November 2023 reviewing opinions of Luci Carstens, PhD, to be persuasive.

- The opinions of treating source Brent Fivecoat, ARNP, to be not an accurate representation of Plaintiff's behavior.

- The opinions of examining source N. Marks, PhD, to be not persuasive.

- The May 2016 opinions of examining source Erin Darlington, PhD, to be persuasive.

- The May 2017 opinions of reviewing source Melanie Mitchell, PhD, to be unpersuasive.

- The May 2019 opinions of reviewing source Michael Jenkins-Guarnieri, PhD, to be persuasive.

- The opinions of Nargis Mozafari, PsyD, to be persuasive but his opinion that Plaintiff would be off-task for 12-20% of the time and absent 4 days a month to be not well-supported.[15]

ALJ Freund found:

- Step one: Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2020.

---

[15] AR 1719-1726.

- Step one: Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of April 10, 2019.

- Step two: Plaintiff had the following medically determinable severe impairments: HIV; degenerative disc disease of the cervical spine; major depressive disorder; and generalized anxiety disorder.. She also found that Plaintiff's hyperlipidemia, mild obesity, and hypertension were not severe impairments.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Specifically, the ALJ noted that she considered Listings 1.15, 14.11, 12.04, and 12.06.

- RFC: Plaintiff had the RFC to perform light work except that:

  > [Plaintiff] cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, crawl, and balance but would need to avoid all unprotected heights. [Plaintiff] would be limited to simple instructions, would need to work away from

the general public, can have occasional interaction with coworkers, would need to avoid fast paced assembly line work, and could handle occasional changes in a work setting. [Plaintiff] would need to avoid concentrated exposure to extreme temperatures and excessive vibration and avoid moderate exposure to airborne particulates and workplace hazards.

- Step four: Plaintiff has no past relevant work.

- Step five:  considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a marker, routing clerk, and router.[16]

Plaintiff now appeals ALJ Freund's denial of disability and asks for an immediate award of benefits.[17] The Commissioner concedes the ALJ erred when evaluating the medical opinions, but the Commissioner asks the Court to remand the matter for further administrative proceedings because there are evidentiary conflicts that

---

[16] AR 1711-1728.

[17] ECF Nos. 1, 11.

must be resolved by the ALJ.[18] Plaintiff avers that because the ALJ's own medical analysis compels a finding of disability, a remand for benefits is the proper remedy.[19]

## II.    Analysis

**A.    Remand Standard**

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course absent rare circumstances.[20] Three factors must be satisfied for the court to consider remand for payment of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were

---

[18] ECF No. 13.

[19] ECF No. 14.

[20] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

credited as true, the ALJ would be required to find the claimant disabled on remand.[21]

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[22]

## B.   Remand Analysis – Medical Opinions: Plaintiff established consequential error.

As agreed to by the parties, the ALJ erred as to her evaluation of the medical opinions because she failed to evaluate the medical opinions of Teresa Avalos, EdM/LMHC.[23] Although not specifically

---

[22] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

[23] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. §§ 404.1520c(a)–(c); 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

addressed by the parties in their arguments regarding ALJ error in the evaluation of the medical opinions as a whole, the Court notes that the ALJ also erred in attributing an opinion written by a non-medical expert state agency staff member to that of a qualified medical expert and evaluating its persuasiveness.

The Court concludes either of the errors noted above would require that the case be reversed and remanded to the Commissioner. The issue, as the parties have agreed, is the whether the case should be remanded for calculation of benefits or for further proceedings.

1.    Standard

An ALJ must consider and evaluate the persuasiveness of all medical opinions.[24] The ALJ need not however "give any specific evidentiary weight . . . to any medical opinion(s)."[25] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant,

---

[24] 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[25] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

and specialization.[26] Supportability and consistency are the most important factors, and the ALJ is required to explain how both of these factors were considered:[27]

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[28]

---

[26] *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). When assessing the medical source's relationship with the claimant, the ALJ is to consider the treatment length, frequency, purpose, and extent, and whether an examination was conducted. The ALJ may also consider whether the medical source has familiarity with the other record evidence or an understanding of the disability program's policies and evidentiary requirements.

[27] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[28] *Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Typically, the ALJ may, but is not required to, explain how the other factors were considered.[29]

2.  *Analysis – the ALJ's consideration of Dr. Carsten and Dr. Darlington's opinions*

Plaintiff argues that the case should be remanded for calculation of benefits because the ALJ's medical-opinion analysis compels a finding of disability.[30]  Plaintiff asserts that because the ALJ found the opinions of Dr. Carsten, Dr. Jenkins-Guarnieri, Dr. Morgan, and Dr. Darlington to be persuasive, and did not properly explain why she did not adopt their finding that Plaintiff would be significantly limited

---

[29] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

[30] ECF No. 14.

1

2

in completing a normal workday or workweek and in maintaining a

schedule, the proper remedy is a remand for calculation of benefits.[31]

3

4

> ### b. The ALJ's articulated reasoning regarding her
> ### consideration of Dr. Carsten and Dr. Darlington's opinions

5

6

The ALJ articulated the following reasoning regarding her

7

consideration of Dr. Carsten's opinions:

8

9

10

11

12

13

14

15

16

17

18

19

20

The DSHS Reviews of Medical Evidence by Luci Carstens, Ph.D. dated November 16, 2023, and December 8, 2022, are persuasive. Of note, the DSHS Severity Ratings are defined as follows: "None or Mild" means no significant limitation on the ability to perform the activity; and "Moderate" means a significant limitation on the ability to perform the activity. (Ex. B45F/24). The only difference between Dr. Carsten's opinions in 2022 versus 2023 was in the ability to perform routine tasks without special supervision, because she found it warranted "none to mild" in 2023, and "moderate" in 2022. (Ex. B45F/29, 31). She reviewed Dr. Morgan's reports each time, and stated the limitations were only "partially" persuasive, and that performing routine tasks without special supervision, making simple work-related decisions, being aware of hazards, asking simple questions, and setting realistic goals should be lowered to "no significant limitation" which can be interpreted to be "none" or "mild." (Ex. B45F/29). This is supported by her note that "based on (Dr. Morgan's) clinical evidence, adjustments should be considered to more accurately reflect the functional limitations." (Ex. B45F/29). It is consistent with evidence that claimant has the ability to advocate for

21

22

[31] *Id.*

23

himself in clinical settings, make decisions related to his care, and work on goals with his counselor. (Ex. B4F/5; B11F/115; B13F/8; B16F/204; B28F/7, 16, 19, 27; B34F/21; B37F/1; B32F/3, 8, 14; B31F/6; B37F/5; B42F/51; B43F/19, 31). Dr. Carstens opined performing work within a schedule, adapting to changes, communicating, maintaining appropriate behavior, and completing a normal workday without interruptions from psychological symptoms should be reduced to "a significant limitation" which is "moderate." (Ex. B45F/29). This is consistent with the ability to remain appropriate and cooperative in clinical settings, but also considers the fact that claimant does, at times, present as anxious and dysphoric. (Ex. B16F/199; B18F/1; B19F/4; 32F/4, 10, 13-14; 34F/53; 36F/2; B37F/1; 43F/33, 35; 45F/12; 46F/32F; 50F/16; 51F/19). The evidence is consistent with moderate, but not marked, limitations in functioning.[32]

Notably, the ALJ articulated that she considered Dr. Carsten's opinions regarding Plaintiff's ability to complete a workday or workweek and cited the language of the DSHS form used by Dr. Carsten that indicated that Plaintiff had a "moderate" limitation in performing those tasks.

The ALJ also considered Dr. Darlington's opinions and articulated the following reasoning:

An early psychological evaluation was performed by Dr. Erin Darlington at Exhibit B21F in May 2016, several years prior to the alleged onset date. To the extent that this

---

[32] AR 1725.

examination is useful or illustrative of claimant's mental health conditions, it is persuasive. Dr. Darlington found claimant to only have moderate limitations due to anxiety and depression, supported by the ability to perform Trails A and B within normal limits, recite digit spans, but some difficulty with delayed recall, and follow instructions. (Ex. B21F/3). He presented as calm, cooperative, and friendly. (Ex. B21F/5). This is consistent with more recent evidence describing claimant as cooperative and open. (Ex. B4F/5; B11F/115; B13F/8; B16F/204; B28F/7, 16, 19, 27; B34F/5, 7, 11, 13, 16, 18, 22, 41, 51, B32F/3; B31F/9, 15; B33F/16, 19, 36; B35F/5; B37F/2, 8; B42F/13, 17, 27, 38, 49, 77; B45F/2; B46F/7).[33]

    c.    *Analysis of the ALJ's consideration of Dr. Carsten's and Dr. Darlington's opinions*

Plaintiff argues that because the vocational expert testified that an individual who had "significant limitations" would not be able to sustain competitive work, Plaintiff should be found disabled pursuant to Dr. Carsten's and Dr. Darlington's opined "moderate" limitations.[34]

The following exchange took place on the record:

EXAMINATION OF VOCATIONAL EXPERT BY [PLAINTIFF'S] REPRESENTATIVE:

---

[33] AR 1726.

[34] ECF No. 14, pg. 2-3.

Q.  I would like you to consider an individual that has moderate limitations in several areas, and moderate Limitation is defined in this case as a significant limitation in their ability to perform the specific work functions. And it is given on a 5 point scale, ranging from no issue to an inability. And based on that scale, we can define it further to where this person is unable to do the following work tasks up to one-third of the time. So, up to one-third of the time or occasionally, unable to do the following workplace functions, which would be performing routine tasks without special supervision, making simple work-related decisions, asking simple questions or requesting assistance, communicating or performing effectively in the work setting, and maintaining appropriate behavior. In your opinion, would these limitations singly or in combination prevent someone from sustaining competitive full time work?

A.  I think that any of those elements would be preclusive, and combined, they certainly would be because it would affect productivity and be a distraction in the workplace. And a person with that would not be able maintain employment.[35]

Plaintiff errs in arguing that the vocational expert testified that the limitations opined by Dr. Carsten and Darlington would render Plaintiff incapable of sustaining employment.  The VE's testimony is not as clear as Plaintiff suggests.  When queried by Plaintiff's counsel,

---

[35] AR 1812.

ORDER RULING ON CROSS MOTIONS TO REMAND - 17

the VE did state that given certain criteria an individual would be limited in his ability to maintain employment.[36]

The vocational expert testified that an individual who was off-task more than one-third of the day and unable to sustain a schedule for more than one-third of the day without special supervision would not be able to maintain competitive employment. Neither Dr. Carsten nor Dr. Darlington, who each completed a form for DSHS and not SSA, stated that Plaintiff would be unable to perform basic functions of work for one-third of the day.

Thus, this cannot serve as reason to remand for an award of benefits. The Court finds that a remand for further proceedings is more reasonable.

c.  *The ALJ's consideration of Dr. Jenkins-Guarnieri's opinions*

The ALJ articulated the following reasoning regarding her evaluation of Dr. Jenkins-Gurnieri's opinions:

A DSHS Review of Medical Evidence by contractor Dr. Michael Jenkins-Guarnieri, dated May 17, 2019, reviewed

---

[36] *Id.*

the reports by Dr. Erin Darlington, Dr. Marks, Dr. Morgan, and the Review of Medical Evidence by Dr. Melanie Mitchell. (Ex. B27F). Though much of this evidence predates the alleged onset date, the review is persuasive. He found claimant should have moderate limitations in performing routine tasks without special supervision, asking simple questions, communicating effectively, maintaining appropriate behavior, and setting realistic goals independently. (Ex. B21F/4). This is supported by a review of the records, and is consistent with claimant's ability to attend his own appointments and engage appropriately with counselors and providers. (Ex. B34F/21; B37F/1; B32F/3, 8, 14; B31F/6; B37F/5; B42F/51; B43F/19, 31). The estimated duration for the limitations was 10 months, supported by a lengthy explanation that stated the claimant would function adequately with comprehensive mental health treatment, and instruction in how to function in occupational and social domains. (Ex. B21F/5). He stated "longer periods of disengagement from the daily challenges involved in working and independent functioning increase the likelihood of future difficulties with effective coping and resilience in the face of these daily challenges and potential stressors…potentially contributing to prolonged dysfunction and disability." (Ex. B27F/5).[37]

d.    *Analysis of the ALJ's error in considering Dr. Jenkins-Guarnieri's opinions*

The Court concludes that any error committed by the ALJ with regard to her consideration of Dr. Jenkins-Guarnieri's opinions cannot

---

[37] AR 1727.

serve as grounds to remand for calculation of benefits, but rather should serve as one for a remand for further proceedings.

The ALJ correctly noted that Dr. Jenkins-Guarnieri's opinions addressed a period prior to the relevant period, were stated by Dr. Jenkins-Guarnieri to be valid for a period of time less than the statutorily required durational period of twelve months[38], and Dr. Jenkins-Guarnieri opined that with treatment Plaintiff would be capable of functioning in the workplace without significant limitation.

For the reasons stated, while there is certainly a degree of persuasive value to Dr. Jenkins-Guarnieri's opinions, they do not serve as a basis to award benefits when considered on their own merit standing alone.

The Court moves on to an analysis of the ALJ's error in her consideration of the opinions of medical expert, Dr. Brooks, and treating Source, ARNP Fivecoat.

---

[38] 20 C.F.R. §§ 404.1505, 416.905.

1

2

e.    *Analysis of the ALJ's consideration of the opinions of*

*Dr. Brooks and ARNP Fivecoat regarding absenteeism*

Plaintiff argues that because Dr. Brooks testified at the hearing that he would defer to ARNP Fivecoat's opinion that Plaintiff would miss four or more days of work per month, ARNP Fivecoat's opinion should be credited and the case should be remanded for a calculation of benefits.[39]

As with the vocational expert testimony cited earlier, the Court concludes that the medical expert's testimony was not as clear as Plaintiff presents it to be.

The following exchange took place between Plaintiff's counsel and Dr. Brooks during the hearing:

> Q. Okay. And then I did want to ask, there were some opinions regarding absenteeism from the workplace from treating providers. They felt he would be absent as many as four or more days a month. Would you agree with that opinion or that he may experience absenteeism as a result of his anxiety and depression?
>
> A. It's certainly possible, yes.
>
> Q. Do you have any reason to disagree with that?

---

[39] ECF No. 11, 14.

A. Well, and I know that he has some medical diagnoses, I'm not testifying about those. I assume those could cause him to miss work that's possible. From moderate, overall moderate levels of anxiety, depression I can't give you the exact amount of hours he might miss work that's incase it does.

Q. Understood. If we have a treating provider, he's been seeing him for a number of years and is providing us a number to that or trying to quantify it, would you defer to that treating provider's opinion?

A. Generally, yes.[40]

The ALJ acknowledged Dr. Brooks testimony, stating in her decision:

Dr. Brooks testified that the Review of Medical Evidence by Dr. Carstens that changed Dr. Morgan's ratings from marked to moderate and from moderate to mild on 10 different items is consistent with cognitive testing that was within normal limits, and claimant would not require such great limitations. (Ex. B45F/29). With regard to absenteeism, Dr. Brooks did state that it was possible claimant might have missed days of work, but he could not say, he would generally defer to a treating provider on such as number. (Hrg. 3:58:08--- 3:59:11, Jun. 17, 2024). He testified that on June 22, 2023, there was as diagnosis of bipolar disorder although there was very little detail of why that would be a correct diagnosis. Dr. Brooks referenced a diagnosis of substance use disorder related to crystal methamphetamine corresponding with altered mental state.

---

[40] AR 1767.

ORDER RULING ON CROSS MOTIONS TO REMAND - 22

Dr. Brooks testified that prior opinions as to marked limitations in the B criteria are overly limiting, and instead opined mild limitations in understanding, remembering or applying information, and moderate limitations in the remaining criteria. He based his opinion on intact cognitive functioning in Exhibit 45F and normal mental status examinations throughout the record.[41]

Plaintiff argues that because Dr. Brooks stated that he would defer to the findings of a treating source as to absenteeism, ARNP Fivecoat's opinion should be credited and that the number of absences opined to would render Plaintiff unemployable.[42]

The Court notes that Dr. Brooks did not testify that he deferred to ARNP Fivecoat's opinion, but rather that he would "generally" defer to a treating source.[43] The vagueness of Dr. Brooks response, considering his prior testimony that he felt that the medical sources' opined limitations were "an overestimation" of Plaintiff's limitations,

---

[41] AR 1720.

[42] AR 11, 14

[43] AR 1767.

1   makes it unclear to what extent Dr. Brooks would have agreed that

2   Plaintiff had an extreme limitation with regard to absenteeism.[44]

3       More importantly, the Commissioner counter-argues that despite

4   Dr. Brooks' statement there remains a conflict in the record to be

5   resolved by the ALJ – that the state agency evaluators found that

6   Plaintiff is capable of completing a normal workweek and workday and

7   adhering to a regular scheduled without additional supervision.[45]

8       The Court agrees with the Commissioner.  Dr. Brooks' opinion

9   was not the only opinion which the ALJ was required to reconcile.

10      Accordingly, the Court concludes that the appropriate remedy is

11  to remand the matter for further proceedings. In summary, the

12  purported reasons highlighted by Plaintiff do not serve as a basis for

13  remand for calculation of benefits. The Court concludes that further

14  development of the record is warranted.

---

[44] AR 1764-1765.

[45] ECF No. 13.

### III.   Conclusion

Plaintiff seeks a remand for payment of benefits. However, further proceedings are necessary because disability during the at-issue period is not clearly established.[46]

The ALJ's error in weighing the medical opinion evidence requires remand. Because the record contains conflicting evidence about Plaintiff's ability to sustain employment, further administrative proceedings are necessary.[47]

Accordingly, **IT IS HEREBY ORDERED**:

1.   The Commissioner's Motion to Remand for Further Proceedings, **ECF No. 13**, is **GRANTED**.

2.   The Clerk shall **TERM** Plaintiff's Opening Brief, **ECF No. 11**.

---

[46] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[47] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021) (requiring the ALJ to assess whether impairments increased or decreased in severity over time).

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings.

4. The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 15th day of October 2025.

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge